[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15822

_____

Agency No. A075-286-171

ODULENE DORMESCAR,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 15, 2012)

Before CARNES, PRYOR, and RIPPLE,* Circuit Judges.

_____

* Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit,
sitting by designation.

CARNES, Circuit Judge:

This is an immigration case involving Odulene Dormescar, a native and citizen of Haiti.  An immigration judge ordered him removed because he had been convicted of an aggravated felony.  The Board of Immigration Appeals dismissed his appeal of that order.  He has petitioned this Court for review.   His petition potentially presents three issues.  The first is whether this Court has subject matter jurisdiction.  If we do, the second issue is whether res judicata bars the Department of Homeland Security's proceedings against Dormescar based on the aggravated felony conviction.  If it does not, the third issue is whether the Department had the authority to amend the notice to appear to charge Dormescar as "admitted to the United States, but . . . removable" when he was originally charged as an inadmissible "arriving alien."  The procedural history of this case is long and winding, but mapping it out in some detail is necessary to an understanding of this leg of the journey and what will probably be the final destination.

## I.

Dormescar was granted lawful permanent resident status in the United States in 1998.[1]  On November 29, 2006, when he was returning to the United

---

[1]An alien who is a lawful permanent resident has "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in

States from Haiti, the Department of Homeland Security[2] served him with a notice to appear.[3] The notice charged him with inadmissibility under 8 U.S.C. § 1182 as an arriving alien who had been convicted of a crime relating to a controlled substance (a 1992 Florida conviction for possession of cocaine) and crimes involving moral turpitude (1990 Florida convictions for misdemeanor battery and felony aggravated assault).

## A.

Those are the events that started this case on the journey leading to this appeal. We usually would proceed step-by-step with a chronological account of what happened thereafter, but we deviate from that usual practice to take a

---

accordance with the immigration laws." 8 U.S.C. § 1101(a)(20); accord 8 C.F.R. § 1.2.

[2]This area of the law is plagued with initialisms and acronyms. See, e.g., Haswanee v. U.S. Att'y Gen., 471 F.3d 1212, 1213 n.1 (11th Cir. 2006) ("The Homeland Security Act ('HSA'), effective November 25, 2002, created the Department of Homeland Security ('DHS') and abolished the INS. The HSA transferred INS functions to the DHS." (citation omitted)). To avoid two of the initialisms, we will (except in direct quotations) refer to the Department of Homeland Security as "the Department," instead of using "DHS," and to the Board of Immigration Appeals, after the first time, as "the Board," instead of using "BIA." We will use the initialism "IJ" for immigration judge to avoid clunky repetition. And we will use "IIRIRA" for the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, after first use, both because there are a number of acts in this area of the law and that acronym does have a nice ring to it.

[3]A notice to appear is the charging document that initiates the removal process and provides the alien with information including the nature of the proceedings against him, the legal authority under which the proceedings will be conducted, the acts or conduct alleged to be in violation of law, the charges against him, and the statutory provisions alleged to have been violated. 8 U.S.C. § 1229(a)(1).

terminology detour.  The concepts of inadmissibility, deportability, and removability are crucial to the resolution of this appeal, and they can be confusing and are sometimes confused, so we will try to clarify them before we travel any farther.

Before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, there was a "fundamental distinction between excludable aliens and deportable aliens." Garcia-Mir v. Smith, 766 F.2d 1478, 1483 (11th Cir. 1985).  Excludable aliens sought admission but had not yet achieved it.  Id. at 1483–84.  They were legally considered detained at the border, even if they were physically present in the United States.  Id.  Deportable aliens, by contrast, were those who had "succeeded in either legally or illegally entering this country."  Id.; see also  Clark v. Martinez, 543 U.S. 371, 375 n.2, 125 S.Ct. 716, 721 n.2 (2005) (explaining that before the enactment of IIRIRA, "aliens ineligible to enter the country were denominated 'excludable' and ordered 'deported,'" and "[p]ost–IIRIRA, such aliens are said to be 'inadmissible' and held to be 'removable'"); Sicar v. Chertoff, 541 F.3d 1055, 1064 n.3 (11th Cir. 2008) ("The IIRIRA replaced the term 'excludable' with 'inadmissible.'").  After IIRIRA was enacted, exclusion and deportation proceedings that had been separate and distinct were merged into unified

4

"removal" proceedings, which determine whether an alien is inadmissible (not yet admitted) or deportable (admitted but removable). See 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."); Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 349, 125 S.Ct. 694, 704 (2005) ("Removal is a new procedure created in 1996 through the fusion of two previously distinct expulsion proceedings, 'deportation' and 'exclusion.'"). A removal proceeding is generally "the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." 8 U.S.C. § 1229a(a)(3).

The enactment of IIRIRA broadened the scope of inadmissibility by altering the status of lawful permanent residents returning from brief trips outside of the United States. See Vartelas v. Holder, ___ U.S. ___, 132 S.Ct. 1479, 1485 (2012). Before IIRIRA, "lawful permanent residents who had committed a crime of moral turpitude could . . . return from brief trips abroad without applying for admission to the United States." Id. After IIRIRA, lawful permanent residents returning from abroad became "subject to admission procedures, and, potentially, to removal from the United States on grounds of inadmissibility." Id. A lawful permanent resident is now inadmissible if he has been convicted of a crime involving moral

turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I). And regardless of whether an alien has lawful permanent resident status, any "alien who is convicted of an aggravated felony at any time after admission is deportable." Id. § 1227(a)(2)(A)(iii). As the Supreme Court explained, some crimes that might make an alien inadmissible will not necessarily make him deportable:

> Although IIRIRA created a uniform removal procedure for both excludable and deportable aliens, the list of criminal offenses that subject aliens to exclusion remains separate from the list of offenses that render an alien deportable. These lists are "sometimes overlapping and sometimes divergent." Judulang v. Holder, 565 U.S. ——, ——, 132 S.Ct. 476, 479, 181 L.Ed.2d 449 (2011). Pertinent here, although a single crime involving moral turpitude may render an alien inadmissible, it would not render her deportable. See 8 U.S.C. § 1182(a)(2) (listing excludable crimes); § 1227(a)(2) (listing deportable crimes).

Vartelas, 132 S.Ct. at 1485 n.3.

To summarize, a conviction for a crime involving moral turpitude makes an alien inadmissible. See id.; 8 U.S.C. § 1182(a)(2)(A)(i)(I). A conviction for an aggravated felony after admission makes an alien deportable, see id. § 1227(a)(2)(A)(iii), and as a result he can be classified as admitted but removable. See id. § 1229a(e)(2)(B). The term "removable" encompasses the terms inadmissible and deportable aliens, and it is defined as: "(A) in the case of an alien not admitted to the United States, that the alien is inadmissible under section 1182

6

of this title, or (B) in the case of an alien admitted to the United States, that the alien is deportable under section 1227 of this title." Id. § 1229a(e)(2)(A)–(B). An alien in removal proceedings "may be charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under section 1227(a)." Id. § 1229a(a)(2).

Dormescar, as we have mentioned, was first charged with inadmissibility under 8 U.S.C. § 1182 as an arriving alien who had been convicted of a crime relating to a controlled substance and crimes involving moral turpitude. That was in November of 2006. Now we will return to what happened next.

## B.

After the Department served Dormescar with the notice to appear in November 2006, the Secret Service took him into custody based on a warrant charging him with possession of counterfeited securities. About two months later, on February 5, 2007, Dormescar pleaded guilty in federal court to one count of uttering and possessing a counterfeited security in violation of 18 U.S.C. § 513(a). On April 25, 2007, the district court entered judgment on Dormescar's guilty plea, and he was convicted of the crime. The district court sentenced him to twelve months in prison.

7

On December 10, 2007, the Department filed in the immigration court the notice to appear that it had served on Dormescar in November of 2006 when he was returning to the United States from Haiti.  Even though the notice was served on Dormescar five months before his April 2007 counterfeiting conviction, it was not filed with the immigration court until eight months after that conviction.   The Department could have, but did not, amend that notice to appear to include the counterfeiting conviction.  Instead, the notice charged him with inadmissibility based on a crime relating to a controlled substance (the 1992 cocaine conviction) and crimes involving moral turpitude (the 1990 misdemeanor battery and felony aggravated assault convictions).

A few months after the Department filed the notice to appear with the immigration court in December 2007, Dormescar filed a motion to terminate the proceedings, making three assertions, all of which he ultimately established:  his 1990 cocaine conviction had been vacated; the 1992 misdemeanor battery conviction was not a crime involving moral turpitude; and he had not been convicted of felony aggravated assault.  A hearing on the motion was scheduled for March 2008.  Sometime before or during that hearing, the Department filed a copy of the record of Dormescar's 2007 counterfeiting conviction, a copy of which

8

was given to Dormescar's counsel at the hearing.[4]  The immigration judge gave Dormescar a continuance to assess the impact of that conviction on his case.

About a week later Dormescar filed a supplement to his motion to terminate the proceedings, arguing that because the Department had not charged him with inadmissibility based on his 2007 counterfeiting conviction, the IJ could not consider it in determining removability.  The IJ denied Dormescar's motion.  In his written order the IJ acknowledged that the Department had failed to establish that Dormescar was inadmissible because of the 1990 and 1992 convictions alleged in the notice.  The IJ ruled, however, that Dormescar was an inadmissible alien because his 2007 counterfeiting conviction was a crime involving moral turpitude and that he was removable for that reason.  The IJ also ruled that Dormescar was not eligible for cancellation of removal because the counterfeiting conviction was an "aggravated felony" under the Immigration and Naturalization Act.

---

[4]It is unclear from the record exactly when the Department filed with the immigration court the record of Dormescar's counterfeiting conviction.  The copy of the conviction record in the record on appeal does not have a filing date stamped or written on it.  In a written decision issued on November 18, 2008, the immigration judge stated that counsel for the Department filed the conviction record with the immigration court at the March 2008 hearing, but the hearing transcript itself does not indicate that any motion was made to file the document in open court either before or after the IJ asked Dormescar's counsel about the counterfeiting conviction.  Instead, the transcript shows that during that hearing Dormescar's counsel told the IJ that he had not been served with a copy of the conviction record; the IJ had a copy made and gave it to him.

Dormescar appealed the IJ's order to the Board of Immigration Appeals. While that appeal was pending, the Department filed a motion asking the Board to remand the case to the IJ so that the Department could amend the notice to add "factual allegations regarding [Dormescar's] criminal history—including his conviction for a crime related to counterfeiting—and any necessary additional charges of removability."

In an order issued on September 9, 2008, the Board "sustained" Dormescar's appeal, denied the Department's motion to remand, and terminated the removal proceedings. "Because [Dormescar's] 2007 conviction was not alleged in the Notice to Appear or a subsequent filing of additional charges," the Board reasoned, "it cannot be a basis for removability." The Board explained: "The Immigration Judge properly concluded that the two convictions alleged in the Notice to Appear did not support the charges of removability. Accordingly, [Dormescar] is not removable as charged, and these proceedings should have been terminated." The Department's motion to remand was denied because it was "general in nature and [did] not specify what additional allegations or charges the [Department] would file if the record is remanded, or why such allegations or charges were not previously lodged." Because the Department had "not provided

10

a sufficient basis for a remand," the Board denied the motion and terminated the removal proceedings. So ended the proceedings that we will call <u>Dormescar I</u>.

## II.

On September 12, 2008, just three days after the Board issued its <u>Dormescar I</u> decision, the Department served Dormescar with a new notice to appear, which it filed with the immigration court several days later. This second notice to appear designated Dormescar as an arriving alien and alleged that he was inadmissible based on his 2007 counterfeiting conviction, which is a crime involving moral turpitude. And so began the proceedings that we will call <u>Dormescar II</u>.

The IJ held a hearing on October 1, 2008. He explained that he was considering certifying the case to the Board because it had not addressed in <u>Domescar I</u> the issue of whether Dormescar had been admitted to the United States. Whether he had been admitted is important. An arriving alien who has been convicted of a crime of moral turpitude is inadmissible, <u>see</u> 8 U.S.C. § 1182(a)(2)(A)(i)(I), but an admitted alien who has been convicted of an aggravated felony "at any time after admission is deportable," <u>id.</u> § 1227(a)(2)(A)(iii). As the Second Circuit explained:

> Whether an alien has been admitted or is seeking admission is still a relevant distinction for purposes of determining potential grounds for removal. If the alien is seeking admission, he is charged in removal

11

proceedings as an inadmissible alien under 8 U.S.C. § 1182.  If the alien has been admitted, however, he is charged in removal proceedings as a deportable alien under 8 U.S.C. § 1227.

Cruz-Miguel v. Holder, 650 F.3d 189, 197 n.13 (2d Cir. 2011).

At the hearing before the IJ in October 2008, Dormescar argued that because the Board's September 9, 2008 order had terminated the proceedings against him in Domescar I, he was deemed admitted on that date.  The IJ directed the parties to submit briefs on that issue.  While the IJ was considering whether to terminate the proceedings or certify the case to the Board, Dormescar filed another motion to terminate the proceedings.  This motion contended that:  (1) he was admitted to the United States by operation of law when the Board terminated the proceedings in Dormescar I; (2) at the end of Dormescar I his immigration status was "lawful permanent resident," not "arriving alien"; (3) because of that status, he should have been charged as admitted but removable under 8 U.S.C. § 1227 instead of being charged with inadmissibility under 8 U.S.C. § 1182; and (4) res judicata barred any further proceedings after Domescar I.  On the res judicata issue, he argued that the Board's September 9, 2008 order in Dormescar I was a final judgment on the merits, that the Department knew about and could have charged the 2007 conviction as grounds for removal during the Dormescar I

12

proceedings, and because it had failed to make the charge at that time, res judicata barred it from being made in Dormescar II, the current proceedings.

The Department responded that res judicata was not a bar because the Dormescar I removal proceedings had been based on the charge that Dormescar was inadmissible because of his 1990 misdemeanor battery conviction and his 1992 cocaine conviction, while Dormescar II was based on a different charge. That different charge is that he was inadmissible because of his 2007 counterfeiting conviction, which is a crime of moral turpitude. Because two different causes of action were involved in the two proceedings, the Department argued, the outcome in Domescar I did not bar the charge in Dormescar II. The Department also argued that Dormescar was properly charged as an inadmissible arriving alien instead of as an admitted but removable alien because applications for admission are considered to be of a continuing nature, and his admissibility was still undetermined when he was convicted in 2007.

The IJ issued an order in November of 2008. In his order the IJ pointed out that the Board's September 9, 2008 order in Dormescar I had not expressly granted Dormescar admission into the United States. The IJ also observed that "the question of whether [Dormescar] is removable based upon his conviction of a counterfeiting offense has not yet been subject to final consideration." For those

13

reasons, and relying on Board precedent which established that the application for admission was "continuing" in nature, the IJ determined that Dormescar was an arriving alien who had been correctly charged with inadmissibility. See Matter of Kazemi, 19 I. & N. Dec. 49, 51 (BIA 1984) ("[A]n application for admission to the United States is a continuing application and admissibility is determined on the basis of the law and the facts existing at the time the application is finally considered."); 8 U.S.C. § 1182(a)(2)(A)(i)(I) (providing that any alien who has been convicted of a crime of moral turpitude is inadmissible).

The IJ concluded that the 2007 counterfeiting conviction was a crime involving moral turpitude and held that Dormescar was inadmissible on that ground. The IJ also determined that the 2007 counterfeiting conviction was an aggravated felony, and because Dormescar had been convicted of an aggravated felony, he was not eligible for cancellation of removal. See 8 U.S.C. § 1229b(a)(3). The IJ did not rule on the res judicata issue and instead certified the record to the Board, asking for clarification about whether the Board had terminated Dormescar I on the merits based on all grounds for removal or just the ones charged in the first notice.

The Board in turn remanded the case to the IJ. In doing so, the Board held: "The current proceedings are not barred by res judicata because they present a

14

different basis for removability than the prior proceedings. The current charge of removal is based on a new factual predicate, namely [Dormescar's] 2007 conviction for uttering and possessing a counterfeited and forged security of an organization." The Board determined that the Dormescar II proceedings did not "arise out of the same nucleus of operative fact" as the Dormescar I proceedings. Even though it found that in Dormescar I the Department could have but did not charge removal based on the 2007 counterfeiting conviction, the Board ruled that the Department was not precluded from bringing a charge based on that conviction in Dormescar II. The Department was not required to bring that charge in Domescar I even though it could have.

The Board explained in Dormescar II that its September 9, 2008 order in Dormescar I, which denied the Department's motion to remand and terminated the proceedings, "did not implicitly consider the validity of a removal charge based on [Dormescar's] 2007 conviction." Instead, the motion to remand was denied because the Department "did not meet its burden of showing a remand was warranted by sufficiently specifying what allegation or charge it would lodge." The Board also ruled that Dormescar was no longer an arriving alien, and for that reason he should be charged as removable under 8 U.S.C. § 1227(a) instead of being charged as inadmissible under 8 U.S.C. § 1182(a). It remanded the case to

15

the IJ so that the Department could charge Dormescar with being admitted but removable instead of being inadmissible.[5] The Board stated that "[t]he effect of [Dormescar's] 2007 conviction on his removability has not been properly presented and adjudicated, and the proposed remand will permit adjudication of that issue." So ended the Dormescar II proceedings.

## III.

The Department complied with the Board's Dormescar II order by filing on March 31, 2009 a form titled "Additional Charges of Inadmissibility/Deportability." In that "Additional Charges" form the Department withdrew its earlier charge that Dormescar was inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien convicted of a crime involving moral turpitude. In its place the Department charged that he was an admitted but removable alien under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an "aggravated felony." The statutory list of aggravated felonies includes "an offense relating to . . . counterfeiting . . . for which the term of imprisonment is at least one year," 8 U.S.C. § 1101(a)(43)(R), which is the crime Dormescar had been

---

[5]The Board's order in Dormescar II stated: "[A] remand is warranted to enable the [Department] to lodge appropriate charges under section 237(a) of the Act, 8 U.S.C. § 1227(a). The [Department] has sufficiently specified the basis of and need for its alternative request for a remand. The effect of [Dormescar's] 2007 [counterfeiting] conviction on his removability has not been properly presented and adjudicated, and the proposed remand will permit adjudication of that issue."

16

convicted of in April 2007.  Although the Additional Charges form expressly changed the charge to reflect that conviction, the form had no specific place to indicate, and when completed did not indicate, that the Department was also changing the immigration status selection of "inadmissible."  That is the status the Department had designated in the first and second notices to appear, which it had filed December 2007 and September 2008.

Near the top of a standard notice to appear form there are these three options, each with a box that can be marked to designate an alien's immigration status:

☐    1.  You are an arriving alien.

☐    2.  You are an alien present in the United States who has not been admitted or paroled.

☐    3.  You have been admitted to the United States, but are removable for the reasons stated below.

On Dormescar's first and second notices to appear, the first box ("You are an arriving alien") is marked with an "x."  That is the box to mark for inadmissible aliens charged with removal under 8 U.S.C. § 1182.  The third box is the one that should be marked for admitted aliens charged with removal ("deportable" aliens) under 8 U.S.C. § 1227.

17

After the Department filed the first Additional Charges form, which amended the second notice to appear, the IJ held a hearing but the recording equipment malfunctioned and no transcript of that hearing exists. After that hearing, the Department filed a second Additional Charges form, which amended the second notice to appear a second time (making it, one could say, the second amended second notice to appear). This second Additional Charges form indicated that on the second notice to appear the Department had intended to change the box designating Dormescar's status from arriving alien to admitted alien. It indicated that by having this typed statement near the top of the form:

> Box 3 on the Notice to Appear should be checked
> instead of Box 1, to wit:

☒ 3.    You have been admitted to the United States, but are deportable for the reasons stated below.

The IJ held another hearing, at which Dormescar asserted that the Department had no authority to amend the designation of status from arriving to admitted but removable. He cited the regulations that allow the Department to amend a notice to add new charges and new factual allegations, 8 C.F.R. §§ 1003.30, 1240.10(e), and argued that they do not permit the Department to change designation of status because it is neither a charge nor a factual allegation. Dormescar contended that the Department should be required to file a new notice

18

to appear instead of being allowed to amend an earlier one and that the proceedings should be terminated.  He also argued that res judicata barred all of the proceedings after Dormescar I, despite the Board's holding that res judicata was not a bar.

On January 7, 2010, the IJ held yet another hearing and issued an oral decision against Dormescar.  The recording equipment malfunctioned yet again, resulting in a hearing transcript filled with notations of "indiscernible."[6] Dormescar appealed the IJ's oral decision (indiscernible as the record of it was) to the Board.  Noting that crucial parts of the January 7, 2010 hearing and of the IJ's statement of his decision had not been properly recorded and could not be transcribed, and that there was no transcript at all of the hearing before that one, the Board remanded the case to the IJ again.  It instructed him to "take such steps as are necessary and appropriate to enable preparation of a complete transcript of

---

[6]For example, one paragraph of the immigration judge's statement of his decision appears in the transcript as follows:

> Well, (indiscernible) remand (indiscernible) specifically says the respondent should be charged under section 237 (indiscernible) of the Act.  It doesn't specify whether it's in an NTA or an I-261 (indiscernible).  (Indiscernible) Board's remand was (indiscernible) alternative charges under 237.  I don't—I think in the exercise (indiscernible).  (indiscernible) requires (indiscernible) allegation.  (indiscernible) on the Notice to Appear, (indiscernible) June 1, 2009 (indiscernible).  At least it puts the respondent (indiscernible).

19

the proceedings, including a new hearing, if necessary." So ended the Dormescar III proceedings.

## IV.

On remand the IJ issued another oral decision, recounting the long procedural history of the case. He acknowledged, as Dormescar had argued, that the designation on the notice to appear of an alien's status "is more than merely a factual allegation; it is a powerful designation of status by the government that can dramatically affect the rights" of the alien subject to removal.[7] He also acknowledged the lack of precedent about whether the Department has authority to amend the designation of status on a notice to appear form. But the IJ ruled that the Board's remand order in Dormescar II required him to allow the Department to amend that part of the notice, and the the relevant regulations did not prohibit the amendment. In rejecting Dormescar's res judicata argument, the IJ explained that the Board "in Dormescar II ruled conclusively that the proceedings were not barred by res judicata because they presented a different basis for removability

---

[7]For example, in removal proceedings the burdens of proof and persuasion depend on whether an alien is charged as inadmissible or admitted but removable. See 8 U.S.C. § 1229a(c)(2)(A), (c)(3)(A). An alien charged with inadmissibility has the burden of proving that he is "'clearly and beyond doubt' entitled to admission[] and that he [is] not inadmissible under any of the grounds enumerated in 8 U.S.C. § 1182(a)." Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1345–46 (11th Cir. 2010). By contrast, if the alien is admitted but charged with removability, the Department bears the burden of proving the grounds for removability by clear and convincing evidence. Id. at 1346 n.8.

20

than the prior proceedings." The IJ ordered Dormescar removed from the United States to Haiti.

Dormescar appealed to the Board, contending that the Department had no authority to amend the second notice to change the designation of his status from inadmissible to admitted but removable. He also contended that res judicata barred all removal proceedings after Dormescar I.

On November 24, 2010, the Board issued a decision holding that the Department had correctly followed its remand order in Dormescar II and that the amendment of the notice to change Dormescar's designation from inadmissible to admitted but removable "was not in violation of any regulatory or statutory provision." The Board also reiterated its holding from Dormescar II that res judicata did not bar the current proceedings because they did not arise out of the same nucleus of operative facts as the earlier proceedings. For those reasons, the Board dismissed Dormescar's appeal. So ended the administrative proceedings part of Dormescar IV, the decision in which is now before us for review.

## V.

In his challenge to the Board's dismissal of his appeal in Dormescar IV, Dormescar contends that res judicata bars the removal proceedings in Domescar II, Dormescar III, and Dormescar IV—everything that occurred after the Board's

21

ruling in Dormescar I terminated the first removal proceedings against him. He alternatively contends that even if res judicata is not a bar, the Board erred by remanding the case in Dormescar II with permission for the Department to change his designation from an inadmissible arriving alien under 8 U.S.C. § 1182 to an admitted but removable alien under 8 U.S.C. § 1227. He insists that the Board had no authority to permit the Department to do that.

### A.

We first consider whether we have jurisdiction over Dormescar's petition for review. He was convicted in 2007 of a counterfeiting offense that constitutes an aggravated felony. See 8 U.S.C. § 1101(a)(43)(R) ("The term 'aggravated felony' means . . . an offense relating to . . . counterfeiting . . . for which the term of imprisonment is at least one year[.]"). Congress has directed that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" an aggravated felony. Id. § 1252(a)(2)(C). An exception applies, however, to petitions for review that raise questions of law. See id. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for

22

review filed with an appropriate court of appeals in accordance with this section.").

Dormescar has raised two questions of law over which we have jurisdiction. See 8 U.S.C. § 1252(a)(2)(D). The first is whether res judicata bars him from being found removable based on his 2007 counterfeiting conviction. See Singh v. U.S. Att'y Gen., 561 F.3d 1275, 1278–80 (11th Cir. 2009) (recognizing that § 1252(a)(2)(D) provides this Court with jurisdiction over questions of law and addressing petitioner's res judicata argument even though he had been convicted of an aggravated felony); see also Maldonado v. U.S. Att'y Gen., 664 F.3d 1369, 1375 (11th Cir. 2011) ("Even though § 1252(a)(2)(C) would otherwise generally bar jurisdiction, we may consider [petitioner's] res judicata challenge on the merits."). The second question of law is whether the Department had the authority to change Dormescar's designation of status in the second notice to appear from inadmissible to admitted but removable.

B.

On the res judicata issue, Dormescar acknowledges that the Department could have charged the 2007 counterfeiting conviction as grounds for his removal during the Dormescar I proceedings, but points out that it failed to do so. He also points out that even though the counterfeiting conviction was not charged as the

23

basis for removal in Domescar I, the Department did use it to convince the IJ to order removal in those proceedings.[8]  Dormescar argues that because the Department could have brought a charge based on the 2007 counterfeiting conviction but did not, and because the Board's 2008 order ending Dormescar I was a final judgment on the merits, res judicata bars all of the proceedings that followed, which were based on that counterfeiting conviction.

As a general rule, "[r]es judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999).[9]  A party asserting res judicata bears the burden of showing these elements:  "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." In re Piper

---

[8]As Dormescar points out, when the IJ ruled in Dormescar I that he was inadmissible and ordered him removed on the basis of the 2007 counterfeiting conviction, counsel for the Department "stood mute."

[9]As we have explained:  "Res judicata, or claim preclusion, bars relitigation of matters that were litigated or could have been litigated in an earlier suit.  Collateral estoppel, or issue preclusion, recognizes that suits addressed to particular claims may present issues relevant to suits on other claims, and requires that the identical issue in question was actually litigated and necessary to the judgment of an earlier suit." Manning v. City of Auburn, 953 F.2d 1355, 1358 (11th Cir. 1992) (footnote, citation, and quotation marks omitted).  Collateral estoppel (or issue preclusion) generally applies when an issue was actually litigated and necessary to the judgment in the earlier proceeding.  Res judicata (or claim preclusion) generally bars relitigation of claims that could have been litigated in the earlier proceeding.

24

Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). Only if all four of those requirements are met do we consider "whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies."[10] Id.

Dormescar I and the proceedings that followed it do not involve the same "cause of action" for res judicata purposes. See Piper Aircraft, 244 F.3d at 1296.

---

[10]The Department urges us to adopt a general rule that res judicata should not apply at all to agency proceedings, particularly proceedings involving the removal of an alien who has been convicted of an aggravated felony. See, e.g., 8 U.S.C. § 1228(a)(1) (providing for "special removal proceedings" that "assure[ ] expeditious removal" of criminal aliens); Carachuri-Rosendo v. Holder, — U.S. —, 130 S.Ct. 2577, 2580 (2010) (explaining that aggravated felonies are "a category of crimes singled out for the harshest deportation consequences"); Johnson v. Whitehead, 647 F.3d 120, 130–31 (4th Cir. 2011) ("No common law preclusion principle applies to an agency when a statutory purpose in opposition to the preclusion rule is evident. Such a purpose is evident here. Removal of aliens who commit serious crimes is a central aim of the INA. Congress not only has adopted streamlined procedures for deporting criminal aliens, but it went even further, limiting judicial review of removal orders in such cases." (alterations, citations, and quotation marks omitted)); Duhaney v. U.S. Att'y Gen., 621 F.3d 340, 351 (3d Cir. 2010) ("The fact that Congress has specifically chosen to amend the immigration laws to facilitate the removal of aliens who have committed aggravated felonies counsels against an overly rigid application of the res judicata doctrine."); Channer v. Dep't of Homeland Sec., 527 F.3d 275, 280 n.4 (2d Cir. 2008) ("It may be that when DHS attempts to remove aliens convicted of aggravated felonies—as opposed to aliens falling into some other category making them removable—the determination of whether res judicata applies changes, given Congress's clear and emphatic position with respect to such aliens."). We have observed that res judicata "applies even more flexibly in the administrative context than it does when a second court of competent jurisdiction is reviewing the decision of a first court." Maldonado, 664 F.3d at 1377.

The Department might be right, but we need not reach the issue of whether res judicata always or never applies in agency proceedings involving aliens who have been convicted of aggravated felonies because, even assuming that the defense generally does apply with full force in immigration proceedings, under the specific facts of this case it is not a bar to the removal order issued in Dormescar IV.

25

The charge that the Department brought after Dormescar I ended was not a charge that it could have brought during Dormescar I. Only after the Board issued its final order terminating the Dormescar I proceedings was Dormescar deemed admitted, and only at that point could the Department charge him under 8 U.S.C. § 1227 as an admitted alien subject to removal based on an aggravated felony conviction. That is the new charge the Department brought in the Dormescar IV proceedings that followed. See 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable." (emphasis added)).[11]

The charge that Dormescar was admitted but removable was not available to the Department until the inadmissibility issue had been resolved in Dormescar's favor in Dormescar I. In that first proceeding the Department had charged Dormescar with inadmissibility under § 1182(a) based on his convictions for

_____

[11]Dormescar did not argue to the IJ or the Board that because he was convicted of counterfeiting in 2007 but was not deemed admitted until the Board issued its September 9, 2008 order, he had not been "convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added). Because Dormescar did not raise that issue before the IJ or the Board, we cannot and do not consider it here. See Sundar v. I.N.S., 328 F.3d 1320, 1323 (11th Cir. 2003) ("[W]e lack jurisdiction to consider claims that have not been raised before the BIA."). Nor did he raise the issue before this Court, which is another reason we do not consider it. See, e.g., Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318–19 (11th Cir. 2012) (holding that an issue not raised on appeal is waived); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (same).

26

crimes involving moral turpitude, specifically his 1990 and 1992 Florida state convictions.  At the conclusion of Dormescar I, the Board held that those convictions were not a proper basis for inadmissibility, the proceedings were terminated, and Dormescar was implicitly deemed admitted.  Then in Dormescar II the Department charged Dormescar with inadmissibility under § 1182(a) based on his conviction for a crime involving moral turpitude, relying on his 2007 counterfeiting conviction, and the IJ ruled that he was removable on those grounds.

The Board held in Dormescar II that Dormescar should have been charged with removability under § 1227(a), and it remanded the case so that the Department could change its charge to one that was proper against an admitted alien.  The Department did exactly that, and Dormescar was ultimately ordered removed as an admitted alien who had been convicted of an aggravated felony. Removability under § 1227(a) is a different charge from inadmissibility under § 1182(a), and the Department could not have successfully brought the charge under § 1227(a) until after Dormescar was deemed admitted at the conclusion of Dormescar I.  Because the charge was unavailable during Dormescar I, res judicata did not bar the Department from bringing it in the proceedings that followed.

27

C.

Dormescar alternatively contends that even if res judicata does not bar the proceedings that followed Dormescar I, the Department had no authority to change his designation in the second notice to appear from arriving inadmissible alien to admitted alien subject to removal, which is, in effect, what the Board directed it to do in Dormescar II.[12]  The Department has broad regulatory authority to amend notices to appear in order to make new factual allegations and bring new charges. See 8 C.F.R. § 1003.30 ("At any time during deportation or removal proceedings, additional or substituted charges of deportability and/or factual allegations may be lodged by the Service in writing."); see also 8 C.F.R. § 1240.10(e) ("Additional charges in removal hearings.  At any time during the proceeding, additional or substituted charges of inadmissability and/or deporatability and/or factual allegations may be lodged by the Service in writing.").  In light of those regulations, the Board had the authority to send the case back to the IJ, which allowed the Department to amend the second notice to appear. See 8 C.F.R. § 1003.1(d)(7) ("The Board may return a case to the Service or an immigration

---

[12]In order to make the charge that the Board had ruled was "appropriate,"  the Department had to charge Dormescar as an admitted but removable alien under 8 U.S.C. § 1227(a), and it accomplished that by amending the second notice to appear when it filed the Additional Charges form.

judge for such further action as may be appropriate, without entering a final decision on the merits of the case.").

Dormescar argues, however, that his status as an arriving alien or as an admitted alien subject to removal is a "designation" instead of a "fact" or a "charge," and because of that, the Department had no authority to amend it. But nothing in the regulations prohibits the Department from changing an alien's designation, and if it has the authority to change factual allegations and charges, there is no reason it cannot change a designation that is part and parcel of the allegations and charges. The designation appears at the top of the notice to appear form separate from the parts where the Department is to state its allegations and charges, but the designation is an allegation of particular facts and circumstances relevant to a charge. The Department's amended second notice to appear actually did change the charge against Dormescar by withdrawing its charge of inadmissibility under § 1182(a) and substituting a charge of removability under § 1227(a). The only thing it did not do was indicate that a different box should be checked on the notice to appear form to correspond to the new allegations.

Dormescar also argues that he was prejudiced by having to bear the wrong burden of proof: the burden of showing admissibility was on him when he was designated as an arriving alien, while the burden of showing removability after he

29

was admitted was on the Department. But Dormescar no longer had to bear the burden of showing admissibility after he was deemed admitted at the conclusion of Dormescar I. And the change in his designation to "admitted" following the remand in Dormescar II made it clear the Department had the burden of showing removability, which it thereafter carried.

## VI.

In conclusion, the Board had the authority to order the remand in Dormescar II, see 8 C.F.R. § 1003.1(d)(7), and its remand order gave the Department the authority to amend the second notice to appear to make the appropriate charge. The Department did so in its Additional Charges form by withdrawing its earlier charge that Dormescar was inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i) as an alien convicted of a crime involving moral turpitude, and charging instead that he was admitted but removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony. See 8 U.S.C. § 1101(a)(43)(R). Even though the Department did not indicate until later that the box it had checked in the second amended notice to appear should be changed to reflect that Dormescar was being charged as admitted but removable under § 1227(a), it was clear from the Department's earlier amendment that Dormescar was being charged that way. He knew that. The Department had the authority to bring that new charge, see 8

C.F.R. §§ 1003.30, 1240.10(e), and to change his designation of status from inadmissible to admitted but removable.

**PETITION DENIED.**

31